Daniels, J.
The testatrix, Sarah Burr, held ten different mortgages, executed to her by Cornelius Horgan and wife, on property situated upon Second avenue and Sixty-first and Sixty-second streets in the city of New York. The mortgagor was in arrear for interest unpaid on nine of the mortgages on the 25th of February, 1879, and together with his wife, then executed and delivered a deed to Sarah Burr, conveying to her the mortgaged property, subject to the ten mortgages then upon the same. This deed was afterwards asserted to have been given by way of addi- ■ tional security for the amounts mentioned in and secured by the mortgages, and an action was brought to obtain a judgment declaring that to be its effect. That action, by a stipulation made by the attorneys for the parties, was discontinued, and another action permitted to be brought by the plaintiffs against the defendants to secure a judgment declaring the deed to be in fact a mortgage, and for the foreclosure and sale of the mortgaged property, and an accounting of the rents and profits while Sarah Burr and her executors were in possession under the deed. A complaint was annexed to the stipulation, which was accepted by the defendants as satisfactory, for the purposes of the action, and it was agreed by the stipulation that the defendants herein will offer no objection, and. will consent to a judgment of foreclosure providing for the sale of. the property, the payment to the executors of the estate of Sarah Burr, deceased, of the amount due to them on the ten certain mortgages upon said property, with interest thereon at the rate called for by said bonds respectively to February 27, *332 1879, and from the 27th day of February, 1879, at five per cent per annum, no interest to be charged on the (so-called) omnibus mortgage, one of said ten mortgages above mentioned, and costs; any surplus arising from the sale of said property to go to the said plaintiffs in the form and manner prescribed by law.
The action was prosecuted pursuant to the authority created by the stipulation, and in the judgment finally recovered, the amount found due upon the mortgages was directed to be first paid to the defendants, as the executors of Sarah Burr, and after such payment, that the surplus, whatever it might be, should be paid over to the plaintiffs. The attorney for the plaintiffs was allowed to recover his taxable costs together with an allowance of $2,000, and these costs were made payable to him out of whatever surplus might remain, after paying to the defendants as executors, the amount with interest owing upon the bonds and mortgages. This disposition of the costs has been made the subject of objection by the attorney for the plaintiffs in the action, and in support of the objection, it has been urged that the costs of the proceeding should be first paid to him before the proceeds of the property should be applied to the payment of the mortgaged indebtedness. But the stipulation has not so directed, this provision on the contrary, being for the payment to the executors of the amount and interest found due to them, and costs. The costs in this manner provided for, were the costs of the estate itself and not of the plaintiffs in the action.
What they were to receive and all that was to be given to them, was the surplus, and out of that their attorney would, as a matter of course, be entitled to the satisfaction of his costs and allowance.
If the stipulation should be considered to be ambiguous in this respect, the facts themselves support the propriety of this construction, for the action was in fact brought for the benefit of the plaintiff’s, and the defendants mortgages and the amounts unpaid on them together with their expenses, constituted the first charge or hen upon the property, and that was so considered by subdivision 3, in the third paragraph of the demand for judgment, contained in the complaint, which provided that the amount found to be lawfully due, owing and coming to Sarah Burr, should be ‘ ‘ First deducted from and paid out of the purchase-money arising from the sale of the real property afore mentioned, and after also paying, discharging and satisfying all valid liens and charges upon said property for taxes, assessments or otherwise, that then the balance or remaining sum by way of a surplus thereof, arising from the said sale of the said property, shall be paid over to the above named plaintiffs *333 in the manner prescribed by law and as their rights may appear.”
This, as the complaint was accepted by the stipulation, was a concession of all that was allowed to the defendants by the judgments in the action.
It gave them a privity of payment, and it was only after the amount found due to them should be satisfied, that any part of the proceeds of the property, could be otherwise applied, appropriated, or received by the plaintiffs. Both the demand for judgment which was conclusive upon the plaintiffs as no answer was made in the case, and the stipulation itself, combine to support the defendant’s right to so much of the moneys as would pay the amounts due upon the mortgages, together with any costs they might become entitled to, before any sum whatever could be otherwise used, appropriated, or applied. And that excluded the attorney’s right to the payment of the costs, otherwise than from the surplus payable to the parties represented by him out of the proceeds of the property.
In the computation and accounting taken by the referee, under the order of reference made for that purpose, he allowed the sum of $13,012.51 for what has been called extraordinary repairs. These repairs were made after the deed of 1879 was executed and delivered, and the guarantee went into possession under it. They were for vaults in the yards, for plumbing, repairs, mason work and sewer connections, and were required in the judicious management of the property. And that the grantee in the deed was entitled to have these repairs made, was proven by the testimony of Mrs. Horgan, the widow who joined in the deed and the mortgages. For she testified that Mrs. Burr, as well as her agent, was “ to take substantially the same care and charge of said property, as if said property were still in the control and possession of the said Cornelius Horgan.” In its judicious and careful management it is to be presumed that he would have provided these repairs and improvements himself. They were no more than were adapted to the convenient use, enjoyment, and preservation of the property, and were within the understanding in this manner mentioned by the witness.
In the computation made by the referee to ascertain the amount payable to the executors under the securities held by them, the referee charged them with interest upon the net rents of the property from 1879 to and. including 1885, in the sum of $13,983.16. This allowance of interest was rejected by the court upon the hearing and decision of exceptions taken to the report of the referee. The rent received from the use of the property exceeded the interest accruing upon the mortgages and was applicable to the pay *334 ment of that interest, and the reduction of the principal debt, and the law so applied it from time to time as the rents were received. And that view of the law was supported by the judgment of the referee. But he considered himself bound by the order of reference to charge interest upon the amounts of rent received, over and above taxes and assessments and necessary repairs.
But while the order was restricted in its language upon this subject, it was not intended, and should not have been so construed, as to require the referee to violate an established rule of law in the computation made by him. What he was directed to do by the order was to take, state and settle the accounting of the defendants of all the rents, issues and profits arising from the property, together with interest from the 27th of February, 1879, which not only left him at liberty, but required lfim to observe and apply the established rules of law applicable to the case in the course of the accounting. He was not required, by the order, to charge interest against the rents and profits, where such interest was not legally chargeable. But what the order designed, was to empower Mm to take a lawful accountmg and to state the rights and liabilities of the parties on that basis, and in construing the order to contain a different direction he imposed a restriction upon it which, by its language, it was not entitled to receive.
The court, on the hearing of the exceptions, rightly excluded this charge for interest as not being authorized by the proof, or entitled to be sanctioned in the reference, which was provided for. In the construction of the order, in this as well as other respects, both the stipulation made between the attorneys and the demand for judgment contained in the complaint, are entitled to be considered, and they warrant no such limitation or restriction of the order as the referee deemed it entitled to receive when he made this charge for interest upon the net rents of the property.
On the 1st of March, 1878, the interest on the mortgage had fallen very much in arrear, and a settlement then took place by which a mortgage was taken upon all the property for the sum of $18,700, being the sum at which the interest in arrear was settled and adjusted. And this mortgage was made payable afterward, with interest, at the rate of five per cent. The referee allowed interest upon the other mortgages at the rate réserved by them from the 1st of March, 1878, when the mortgage for the preceding interest was given to the 27th of February, 1879, when the deed of conveyance was executed and delivered.
This allowance has been resisted under the stipulation, as well as the language mentioned in the mortgage to secure the interest which has accrued prior to the 1st of March, *335 1878. But the stipulation contains no provision supporting this objection. But its authority for this intervening period was followed precisely in the computation of the referee. For it was agreed by the stipulation that the executors of Sarah Burr should be paid the amount due to them on the original nine mortgages, with interest at the rate called for by the bonds to February 27, 1879, and it was that rate, for the period of time in controversy, that was adopted by the referee. Neither the stipulation nor what has been called the omnibus mortgage provided for this period any lower or different rate of interest. But it was from the 27th of February, 1879, only that the interest was to be at the rate of five per cent per annum.
And the mortgage given for the interest extended no further, than that the interest upon the debt secured by that mortgage, should be at the rate of five per cent per annum payable monthly, etc. The executors were entitled by the original nine mortgages to interest over this controverted period, and as it was no otherwise provided for by either the stipulation, or the mortgage given for the interest that had accrued to the 1st of March, 1878, the referee was right in allowing it at the rate reserved and secured by such mortgages. When the mortgages for the interest in arrear was given, Sarah Burr had money in her hands belonging to Cornelius Horgan, the mortgagor, amounting to the sum of $456.78, and in his statement of the account the referee charged this sum against her executors together with interest, amounting to the further sum of $234.42. These items were rejected by the court on the ■hearing of the exceptions filed to the report of the referee, and they seem to have been rightly disposed of in this manner. For as a settlement and compromise took place at the time when the mortgage for the interest in arrear was given, it is not unreasonable to presume that this money in the hands of Sarah Burr entered into the settlement and compromise. The interest in fact in arrear and owing exceeded the amount for which the mortgage was taken. It is stated to have amounted to the sum of $19,371.55, and in the adjustment then made, it would be natural as well as reasonable, that this amount of money should be brought into it as a part of the settlement. The balance between the mortgage and the amount of interest not provided for, exceeded this sum of money, and it is not to be supposed, for it would be an unreasonable view to adopt of the conduct and design of the parties, that they would leave this sum of money undisposed of and not included in the settlement, when the compromise took place and the mortgage for $18,700 was executed and delivered. If the mortgage had been given for the full amount of the *336 interest, there would have been room for a different presumption. But as it was not, and there was a larger balance remaining over the amount of the mortgage than this sum of money, the most probable view to be adopted is that the money was used in some manner to liquidate or adjust this balance.
The court upon the disposition of the exceptions allowed the defendants $2,261.05 for arrears of taxes unpaid upon the property in 1818, at the time the deed was delivered to Sarah Burr.
The evidence proves that these taxes were paid by her agent and no good reason appears why the amount so paid should not be allowed to the executors.
It has been urged, by way of supporting the objection taken to their allowance, that the order of reference only provided for taxes from the delivery of the deed absolute in form, but it did not exclude the allowance of such taxes, either by words or implication, and it did contain such directions as authorized a full and complete accounting to be had concerning the property before the referee.
To ascertain and report the amount actually due and payable to the defendants as executors, it was not the purpose or design of the parties to exclude the defendants right to reimbursement for these taxes, but the stipulation and judgment, in view of which the order is to be construed, authorized their recovery by the defendants. And the fact that the taxes so paid might have been overlooked by them, when it was proven that they were paid, did not exclude their right to have them allowed as a part of the moneys they were entitled to be paid, out of the proceeds of the sale of the property.
By the judgment which was recovered, the defendants were allowed interest from the 1st of January, 1886, on the amount secured by the tenth mortgage, which was given for the overdue interest. By the stipulation it was agreed that no interest was to be charged on that mortgage. This allowance of interest. contained in the judgment seems to be in conflict with this part of the stipulation.
Its language is broad, unqualified and unrestrained by circumstances, otherwise it would fail to extend beyond the time when the mortgage passed into the judgment, as it did in December, 1886, and interest might be charged upon its amount from that time. But if it could be so charged, it certainly could not be from the preceding month of January. In this respect the judgment exceeded the obligations of the plaintiffs, as they were agreed upon by the stipulation made between the attorneys, and so far as the judgment has provided for interest upon the amount of the mortgage given for interest, it should be modified by *337 striking out that direction. The item of $1,1GG.G6 included in the mortgage given for interest, has been objected to as unauthorized, for the reason that it was interest that bad accrued on premises owned by Mrs. Horgan. But it was within the authority of the parties making the settlement resulting in the execution and delivery of the mortgage for $18,700, to include this sum of money in it as a part of the debt to be secured by it, if they were so disposed to do. And that they were is proved by the fact that not only Cornelius Horgan himself, but Ellen Horgan, the owner of this piece of property, joined in the mortgage in which this sum of money was made a part of the debt secured to be paid.
There was no misunderstanding as to this fact, but this amount of interest was voluntarily made a part of the sum secured by this mortgage, and having been so inserted in it and its payment provided for, the defendants were entitled to collect it under the mortgage. The referee was not justified, therefore, in deducting it from the amount, and the court rightly restored it on the hearing and decision of the exceptions.
The defendants do not insist upon the consideration or allowance of the exceptions taken by themselves, which were overruled in the directions which were given for the entry of the judgment.
The judgment, as it has been entered, should therefore be so far modified only as to exclude from it the directions for interest on the mortgage given for $18,700, and, as so modified, the judgment should be affirmed, without costs to either party.
Van Brunt and Brady, JJ., concur.